529 F.2d 1395
 91 L.R.R.M. (BNA) 2426, 78 Lab.Cas. P 11,260
 ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC.,
OREGON-COLUMBIA CHAPTER, Plaintiff-Appellee,
v.
INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 701,
Defendant and Third-Party Plaintiff-Appellant,
and
Northwest Concrete Pumping Association, Inc., et al., and
Joint Council of Teamsters No. 37, International Brotherhood
of Teamsters, Chauffeurs, Warehousemen and Helpers of
America, Defendants-Appellees,
Hans Juhr et al., Third-Party Defendants-Appellees.
 No. 74--2687.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 28, 1976.
Rehearing and Rehearing En Banc
Denied April 13, 1976.
 
 Terry DeSylvia (argued), of Black, Kendall, Tremaine, Boothe & Higgins, Portland, Or., for appellant.
 James H. Clarke (argued), Portland, Or., for appellee.
 Before: DUNIWAY and SNEED, Circuit Judges, and WEIGEL,* District Judge.
 DUNIWAY, Circuit Judge:
 
 
 1
 Associated General Contractors (AGC) brought this action in the district court to reform certain work assignment provisions of its collective bargaining agreement with the International Union of Operating Engineers, Local 701, and to enjoin Local 701 from seeking arbitration of grievances related to those provisions. Local 701 counterclaimed under § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185 (1970), for damages for breach of contract. The district court entered judgment for AGC, dismissing Local 701's counterclaim 'on the merits,' and holding that a prior ruling of the National Labor Relations Board pursuant to § 10(k) of the LMRA, 29 U.S.C. § 160(k) (1970), reported at 205 N.L.R.B. 383, precluded Local 701 from suing for damages under § 301 and effectively barred its only defense to AGC's complaint. Local 701 appeals and we reverse.
 
 
 2
 This case concerns the operation of concrete pumps in Oregon and eastern Washington. Both the Joint Council of Teamsters No. 37 and Local 701 represent concrete pump operators in the region. In June of 1970 and 1973, AGC and Local 701 entered into collective bargaining agreements which provided, inter alia, that:
 
 
 3
 1. 'Crews on concrete pumps shall consist of an Operating Engineer.' and
 
 
 4
 2. 'No contractor . . . covered by the terms and conditions of this Agreement shall subcontract any work to a subcontractor or employer who is not signatory to this Labor Agreement.'[1]
 
 
 5
 The purpose of these provisions is to insure that only members of Local 701 would operate concrete pumps at sites where an AGC member was the general contractor.
 
 
 6
 In 1972 Western-Pacific Piledriving Corp., a member of AGC and thus a party to the agreement, subcontracted the concrete pumping work at the Trojan Nuclear Power Plant in Oregon to Pump-Con, Inc. Pump-Con was not a signatory to the AGC-Local 701 agreement, but was a member of the Northwest Concrete Pumping Association (Northwest), which had an agreement with the Teamsters Union substantially similar to that Between AGC and Local 701. It provided that Northwest members would employ only members of the Teamsters to operate concrete pumps. A dispute between Local 701 and the Teamsters over which contract would predominate was inevitable.
 
 
 7
 Pump-Con employed a Teamster to operate its concrete pump, prompting Local 701 to file a grievance with Western-Pacific. A Board of Adjustment, as provided in the AGC-Local 701 agreement, heard the grievance and ruled that the disputed work was to be performed by a member of Local 701. To protect its position, the Teamsters threatened a strike. In response Western-Pacific filed an unfair labor practice charge with the NLRB against the Teamsters. See LMRA § 8(b)(4) (D), 29 U.S.C. § 158(b)(4)(D) (1970).
 
 
 8
 The dispute was heard before the NLRB, which determined that the concrete pumping work on the Trojan Nuclear Power Plant site properly belonged to the Teamsters. Joint Council of Teamsters No. 37, 1973, 205 N.L.R.B. 383. In addition, at the request of Northwest, the NLRB expanded the scope of its order to cover all situations in which members of the Northwest performed concrete pumping work for AGC contractors. Id. at 386.
 
 
 9
 Local 701 notified the Board of its intent to comply, but continued to file grievances against AGC members who subcontracted pumping work to members of Northwest. In essence, Local 701 maintained that the NLRB order, while requiring members of Northwest to use Teamsters members on their concrete pumps, did not relieve AGC members of their obligations under the collective bargaining agreement to subcontract with signatories of the AGC-Local 701 agreement and thus, by implication, not to contract with members of Northwest.
 
 
 10
 To avoid arbitration, which it contended would be fruitless, AGC filed this action for declaratory and injunctive relief. Local 701 answered and later counterclaimed for damages for breach of contract. The district court, relying on NLRB v. Radio & Television Broadcast Engineers Local 1212, 1961, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (CBS) and New Orleans Typographical Union No. 17 v. NLRB, 5 Cir., 1966, 368 F.2d 755, held that the NLRB order awarding the work to the Teamsters required it to dismiss Local 701's counterclaim and grant AGC the relief it sought, including reformation of the AGC-Local 701 contract to eliminate the provision that we have quoted above, insofar as it prevents subcontracting with members of Northwest.
 
 
 11
 In 1947, responding to a wave of post-World War II strikes, Congress sought to establish a process by which to resolve labor disputes without costly work stoppages. LMRA § 1(b), 61 Stat. 136 (1947). Among those evils which received attention in the Labor Management Relations (Taft-Hartley) Act of 1947 were jurisdictional disputes. While the Taft-Hartley Act was the subject of acrimonious debate and a presidential veto, all sides agreed that strikes by one union to compel an employer to assign it work being performed by another union were counterproductive. The mechanism by which Congress sought to eliminate jurisdictional strikes was § 10(k) of the LMRA, 29 U.S.C. § 160(k). See O'Donoghue, Jurisdictional Disputes in the Construction Industry Since CBS, 1964, 52 Geo.L.J. 314, 316--18. To effectuate the purposes of § 10(k), it is essential that once an NLRB order becomes final, no court--state or federal--be permitted to impair compliance with it. Garner v. Teamsters Local 776, 1953, 346 U.S. 485, 490--91, 74 S.Ct. 161, 98 L.Ed. 228; Sovern, Section 301 and the Primary Jurisdiction of the NLRB, 1963, 76 Harv.L.Rev., 529, 544--50. This means that the Board's decision, so far as actual assignment of the work to one union or the other is concerned, preempts the contract provision.
 
 
 12
 In this case the parties dispute whether the preemption doctrine so far applies as to render the contract provision invalid for all purposes. We hold it does not. If Local 701 were suing Northwest to compel it to use members of Local 701 rather than Teamsters to operate concrete pumps, it is clear that the NLRB order would preclude relief in this court. New Orleans Typographical Union No. 17, supra, 368 F.2d at 767. If Local 701 were suing Northwest for damages, it is arguable that the court would be required to abstain. Carey v. Westinghouse Electric Corp., 1964, 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320 (dicta); but cf. Local 1547, IBEW v. Local 959 Teamsters, 9 Cir., 1974, 507 F.2d 872, 878--79 (award of damages for violation of 'no raid' agreement between unions may be proper in some cases, even though the NLRB has held an election in which the employees favored the raiding union.) In both hypothetical situations a judgment in favor of the union which lost before the NLRB could place the employer 'between the devil and the deep blue,' CBS, supra, 364 U.S. at 575, 81 S.Ct. 330, forced either to violate the NLRB's order or the court's decree.
 
 
 13
 The cases cited by AGC all involve a single employer caught between the conflicting demands of two or more unions. See, e.g., Local 416, Sheet Metal Workers v. Helgesteel Corp., 7 Cir., 1974, 507 F.2d 1053; Local 7--210, OCAW v. Union Tank Car Co., 7 Cir., 1973, 475 F.2d 194, cert. denied 414 U.S. 875, 94 S.Ct. 68, 38 L.Ed.2d 120; Ironworkers Local 395 v. Lake County Bhd. of Carpenters, N.D. Ind., 1972, 347 F.Supp. 1377; Dock Loaders Local No. 854 v. W. L. Richeson & Sons, Inc., E.D.La., 1968, 280 F.Supp. 402.
 
 
 14
 This case does not involve these intractable problems. The AGC, if Local 701 were to prevail on remand, would not be faced with the choice of violating an NLRB order or paying damages. If AGC members used only subcontractors signatory to the AGC-Local 701 contracts and so bound to employ members of Local 701 on their concrete pumps, i.e., non-members of Northwest, they would fulfill their contractual obligations to Local 701 under the Collective Bargaining Agreement without at the same time violating the NLRB order. If an AGC member subcontracts the concrete pump work with a member of Northwest, the Teamsters will be entitled to man the pumps. But there is no legal obligation upon an AGC member to contract with a member of Northwest. By refraining from doing so, and contracting with a subcontractor who is a party to the AGC-Local 701 agreement, the AGC member avoids any breach of the contract with Local 701. Nothing in the NLRB decision purports to prevent AGC members from complying with the AGC-Local 701 agreement. All that the Board held is that if an AGC member does breach the AGC-Local 701 agreement by subcontracting with a member of Northwest, the Teamsters will get the work. It is the making of such a subcontract which breaches the AGC-Local 701 contract. In such a case, because of the Board decision, Local 701 cannot force the employment of its members on the job. The Board's decision does, to that extent, preempt the AGC-Local 701 agreement. But this does not mean that Local 701 cannot get damages for the breach. That question was not before the Labor Board and was not decided by it. The rationale for preemption, avoiding the creation of conflicting or incompatible standards of conduct, Vaca v. Sipes, 1967, 386 U.S. 171, 180--81, 87 S.Ct. 903, 17 L.Ed.2d 842, is thus not present here.
 
 
 15
 The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Stanley A. Weigel, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The quoted language is from the 1970 agreement. The 1973 contract is substantively identical