**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RONALD K. HOOKS, Regional Director of the Nineteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, | No. 12-36068 |
| | D.C. No. 3:12-cv-01691-SI |
| Petitioner - Appellee, | |
| v. | MEMORANDUM* |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 8; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 40, | |
| Respondents - Appellants. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted September 9, 2013
San Francisco, California

Before: ALARCÓN, FISHER, and BERZON, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

This appeal from a preliminary injunction pursuant to section 10(*l*) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(*l*), concerns a jurisdictional dispute between two labor unions over work at the Port of Portland ("Port"). We affirm the injunction in part and vacate in part. We remand to the district court for modifications to the injunction consistent with this disposition.

**(1)** The district court did not abuse its discretion in holding that the Regional Director ("Director") of the National Labor Relations Board ("the Board") will likely succeed in establishing that the International Longshore and Warehouse Union, ILWU Local 8, and ILWU Local 40 ("ILWU") violated section 8(b)(4)(ii)(B) of the Act. 29 U.S.C. § 158(b)(4)(ii)(B).

It was not an abuse of discretion to conclude that the Board is likely to find that the Port controls the disputed work. The Port expressly retained the right to control the disputed work when it leased terminal operations to ICTSI Oregon, Inc. in 2010. In addition, ILWU's argument regarding the shipping carriers ability to bypass the Port conflates the carriers' control over their containers with the legal question of whether they have the "'right to control' the assignment of the work" at this port. *NLRB v. Enter. Ass'n of Pipefitters of New York & Vicinity, Local Union No. 638*, 429 U.S. 507, 537 (1977). Finally, although the Board is under no

obligation to adopt an Administrative Law Judge's recommendation,[1] *Overstreet v. United Bhd. of Carpenters, Local Union No. 1506*, 409 F.3d 1199, 1207 n.12 (9th Cir. 2005), the thorough opinion of ALJ Schmidt finding in favor of the Director on this claim is a "useful benchmark," *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1186 (9th Cir. 2011) (quotation marks and citation omitted), of the Director's likelihood of success before the Board.[2]

We are mindful that an employer cannot be permitted purposely to contract away its right to control, thereby insulating itself from otherwise lawful primary activity. But in this case, employees of the Port — not the shipping carriers —

---

[1] The ALJ decision, *ILWU (Port of Portland)*, 2013 WL 4587186 (NLRB Div. of Judges Aug. 28, 2013), is not part of the record because it was issued after the district court's opinion; we may take judicial notice of it, however, pursuant to Federal Rule of Evidence 201. *See Small*, 661 F.3d at 1186. We likewise take judicial notice of Judge Michael Mosman's June 17, 2013 decision vacating the section 10(k) award. *See* 9th Cir. Dkt. No. 60 (Aug. 30, 2013).

[2] ILWU's reliance on a footnote in *NLRB v. Int'l Longshoremen's Ass'n, AFL-CIO*, 473 U.S. 61, 74 n.12 (1985), is unavailing. As the district court correctly noted, the passing comment does not alone support the factual conclusion that these carriers have the right to control this work at this port at this time. We also agree with Judge Simon and ALJ Schmidt that the line of cases beginning with *Associated General Contractors of America, Inc. v. I.U.O.E., Local 701*, 529 F.2d 1395 (9th Cir. 1976), is inapposite. Those cases concern subcontracting practices in the construction industry, in which different contractual relationships are permitted than are applicable here. *See, e.g.*, 29 U.S.C. § 158(e) (exempting construction industry contracts from prohibition on agreements not to subcontract).

have performed the disputed work for 40 years. And ICTSI was not a party to the collective bargaining agreement with ILWU at the time it entered into the lease with the Port. We therefore see no evidence to suggest that these secondary employers "actively and knowingly contracted away [their] control by initiating the very restrictions which ultimately gave rise to the union's demands. . . ." *Electrical Workers, Local 501 (Atlas Construction Company)*, 216 NLRB 417 (1975), *enf'd* 566 F.2d 348, 353 (D.C. Cir. 1977).

If the Board finds that the Port controls the disputed work, ILWU's invocation of the work-preservation doctrine fails. *See NLRB v. Int'l Longshoremen's Ass'n, AFL-CIO*, 447 U.S. 490, 504 (1980). As a result, it was not an abuse of discretion for the district court to conclude that the Director is likely to succeed in establishing that ILWU's grievances and lawsuits constitute unlawful secondary activity in violation of section 8(b)(4)(ii)(B).

The district court's holding as to section 8(b)(4)(ii)(B) does not depend on the Board's findings in the section 10(k) proceeding. 29 U.S.C. § 160(k). Indeed, the district court itself found that the Port likely controlled the disputed work in proceedings *prior to* the Board's section 10(k) ruling. As a result, neither ILWU's constitutional challenge to the Board's quorum nor the June 17, 2013 decision

4

vacating the section 10(k) award on jurisdictional grounds undermines this aspect of the injunction.

Having found a likelihood of success on the merits, the district court did not abuse its discretion in concluding that the risk of irreparable harm, the balance of the hardships, and the public interest support issuance of a section 10(*l*) injunction here. *See Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200, AFL-CIO*, 611 F.3d 483, 490 (9th Cir. 2010). It was not an abuse of discretion to find that ILWU's continued prosecution of the grievances, with resulting litigation costs and liability risks, as well as the risk that the carriers would act on their threats to bypass the Port, even before any awards are enforced against them, outweighed the hardship to ILWU from delaying adjudication of its damages claims.

The "familiar set of four equitable factors," *id.*, therefore supports the district court's injunction with respect to section 8(b)(4)(ii)(B).

**(2)** In light of Judge Michael Mosman's June 17, 2013 decision vacating the section 10(k) award, the district court's holding with regard to section 8(b)(4)(ii)(D), 29 U.S.C. § 158(b)(4)(ii)(D), cannot stand. The district court's reasoning — that "[a]fter the NLRB has issued a § 10(k) decision resolving a disputed work assignment, it is a violation of § 8(b)(4)(ii)(D) for the losing union

5

to file lost work opportunity grievances or § 301 claims that have the object of undermining the § 10(k) award" — is premised on the existence of a prior section 10(k) award.

We do not pass on the merits of Judge Mosman's holding that the Board lacked jurisdiction to issue the section 10(k) award. Whether the holding is correct or not, the district court judgment in that case vacated the section 10(k) award, so it is not currently in effect. The district court provided no basis other than interference with the section 10(k) award for concluding that the Director is likely to succeed in establishing a violation of section 8(b)(4)(ii)(D). We therefore vacate that portion of the injunction directed at conduct in violation of section 8(b)(4)(ii)(D). Each party shall bear its own costs of appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**