TIMMER, J„
joined by BRUTINEL, J., dissenting.
¶45 By permitting the City to subsidize PLEA simply because the release time terms are tucked within a collective bargaining agreement, the majority undercuts the Gift Clause’s aim “to prevent governmental bodies from depleting the public treasury by giving advantages to special interests .,. or by engaging in non-public enterprises.” Wistuber, 141 Ariz. at 349, 687 P.2d at 357. I respectfully dissent.
¶ 46 The substantial benefits bestowed on PLEA are allowable under the Gift Clause only if they serve a public purpose. See Turken, 223 Ariz. at 345 ¶ 7, 224 P.3d at 161, No public purpose is served by diverting officers from safeguarding the public to work almost unchecked for PLEA. The City has no control over how PLEA directs the officers on release time and is not even told what the officers do for PLEA, Cf. Kromko, 149 Ariz. at 321, 718 P.2d at 480 (stating that “the fear of private gain or exploitation of public funds envisioned by the drafters of our constitution” is absent when private entity’s operation of public hospital is subject to the control and supervision of public officials). As a testifying labor expert put it, “[PLEA officials] are given a blank check to do ... as they determine is appropriate to meet the needs of their organization.” Officers on release time can lobby the legislature for and against laws that interest PLEA and its members, campaign for elected officials who support PLEA, attend PLEA functions, manage PLEA elections, and engage in any activities that promote PLEA’s private interests, even if it is to the City’s detriment. While these activities may benefit officers and cer *325 tainly benefit PLEA, they do not serve a public purpose. Cf. Small v. Operative Plasterers’ & Cement Masons' Int’l Ass’n Local 200, AFL-CIO, 611 F.3d 483, 486 (9th Cir. 2010) (“After all, the very purpose of labor unions is to advocate zealously for their members.”),
¶47 The majority finds that the release time provisions serve a public purpose because they are set forth in the MOU, which in turn serves the public by enabling the City to hire and collectively negotiate with Unit 4 officers. See supra ¶¶23, 25. In my view, the majority conflates the public purpose served by seeming City employees through collective bargaining with the public purpose served by the terms reached through such efforts. The City may derive some benefits from negotiating with Unit 4 officers through a single representative rather than by negotiating with individual officers. But the public benefit resulting from collective bargaining does not mean that the release time provisions agreed to through that process necessarily serve a public purpose. If that were so, public entities could easily circumvent the Gift Clause simply by placing a gift within a collective bargaining agreement. And nothing suggests that PLEA would not have negotiated an MOU for Unit 4 officers absent those provisions. Why else would officers pay approximately $1.7 million in annual dues to PLEA to represent them in determining wages, hours, and working conditions if not for PLEA to negotiate on their behalf?
¶48 The majority’s stronger argument is that the release time provisions promote a public purpose by serving as a component of the compensation package for Unit 4 officers. See supra ¶24. The majority emphasizes that the City originally allocated $660 million for Unit 4 officer compensation before negotiating with PLEA to use a “chunk” of that money for release time. See supra ¶14. A City negotiator testified that this “chunk” was “costed” against the compensation package as a whole, and if it was not used for release time, it would be folded back into the compensation package. As the City had included release time provisions in its MOUs since 1977, however, it is hardly surprising that it built release time moneys into its Unit 4 allocation. Nothing indicates that the City would have allocated $660 million for Unit 4 officers if release time was off the table. Indeed, before negotiations for the 2010-2012 MOU commenced, the police department suggested to City negotiators that “[a] reduction in cost of City funded PLEA operations” would “increas[e] funds available for mission-critical functions;” the department did not suggest that a reduction would free up money to increase officer benefits.
¶ 49 Other evidence supports the trial court’s finding that the MOU provisions were negotiated individually and “not as a total package offered to Unit 4 with those members being allowed to divide it how they wished.” See Shooter v. Farmer, 235 Ariz. 199, 200 ¶ 4, 330 P.3d 956, 957 (2014) (“We defer to the trial court’s findings of fact unless they are clearly erroneous.”). City Councilman Sal DiCiccio testified that the MOU provisions were “separately negotiated” rather than as part of a “total package.” The MOU does not require that unused release time be paid to officers. And release time cannot be accurately “costed” to officers’ salaries because a large amount of release time—representation hours—are unlimited. Tellingly, after the court preliminarily enjoined the release time provisions in the 2010-2012 MOU, the City did not use the funds designated for release time under that MOU to compensate Unit 4 officers, (After the court found that release time is not compensation, in part because the City did not treat it as such after the preliminary injunction, and entered the permanent injunction, the City and PLEA amended the 2012-2014 MOU to provide additional vacation time to officers equaling the number of unused release time hours. This belated act does not vitiate the evidence before the court at the time of its ruling that the City did not treat release time as compensation.),
¶ 50 The majority cites language in the MOU providing that release time is funded “in lieu of wages and benefits.” See supra ¶14, Declaring this does not make it so. If we look no further than a self-serving contractual provision, private subsidies could escape Gift Clause scrutiny whenever the parties agree that subsidies are “compensation.” Cf. *326 Wistuber, 141 Ariz. at 349, 687 P.2d at 357 (stating that in determining the existence of a public purpose, the court should consider the “reality of the transaction” and not just the “surface indicia of public purpose”).
¶ 51 Even if the money designated for release time would have otherwise been paid to officers, it does not necessarily follow that release time serves a public purpose as “compensation.” Following the majority’s logic, the City could compensate officers by giving money to a private business to establish a coffee house near a police station for the officers’ enjoyment. If “public purpose” can be stretched this far, the Gift Clause, at least in the public employment context, has met its end.
¶ 52 The majority characterizes my position as positing that release time benefits violate the Gift Clause because they benefit a private organization. See supra ¶25. Not true. Payments to a private entity to provide benefits to public employees undoubtedly can serve a public puipose by providing an incentive for public employment. Benefits such as health insurance, gym memberships, and emergency child care for employees fall within this category. Without attempting to precisely define what payments to private entities constitute employee compensation for Gift Clause pui^oses, at a minimum, such payments must substitute for the moneys an employee would otherwise pay for the benefit provided directly to the employee by the third party. Thus, payments to PLEA to represent an officer in grievance proceedings could be compensation because the officer would otherwise have to pay money to hire a representative. But when public resources given to a private entity can be used for any purpose directed by the entity, as here, and the public expenditure does not substitute for an expense the employee would otherwise pay, that expenditure cannot be considered compensation.
¶ 53 Alternatively, I agree with the trial court and the court of appeals that the release time provisions violate the Gift Clause because the City does not receive sufficient consideration in return for its $1.7 million outlay. Cf. Turken, 223 Ariz. at 345 ¶ 7, 224 P.3d at 161 (stating that to comply with the Gift Clause, a governmental entity must receive consideration in return for expenditure that “is not so inequitable and unreasonable that it amounts to an abuse of discretion”) (citation and internal quotation marks omitted). Whether the City receives sufficient consideration turns on “the objective fair market value” of what PLEA promised to provide. See id. at 350 ¶ 33, 224 P.3d at 166. The record does not reflect such a value. Indeed, the City lacks a mechanism to quantify the value of benefits it receives from the release time provisions.
¶ 54 I cannot see how any value the City receives from the release time provisions approaches a fair market value of $1.7 million. The MOU does not obligate PLEA to provide any services to the City. Any promotion of employer-employee relations, see supra ¶25, fostered by the release time provisions are indirect benefits that cannot constitute consideration. Cf. id. (rejecting assertion that “indirect benefits” constitute consideration). The majority concludes that Unit 4 officers’ agreement to work as police officers in exchange for a compensation package that includes release time provisions is sufficient consideration. See supra ¶32. Because I agree with the courts below that the extensive benefits given to PLEA do not serve as officer compensation, I likewise reject the majority’s reasoning here. Nothing in the record suggests that the City could not employ police officers without subsidizing PLEA with release time benefits. And any release time that could be compensation, for example, time used to represent officers in grievance proceedings, has neither been quantified nor assigned a monetary value.
¶ 55 To subsidize a labor organization under the guise of employee compensation violates the Gift Clause. That is what has occurred here. In light of the lack of any contractual assurance that PLEA release time actually serves a public purpose, this generous benefit cannot be considered anything other than a gift to PLEA prohibited by the Gift Clause. I would uphold the trial court’s injunction.