[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-12745

_____

INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 947,

Petitioner,

MATTHEW C. BROWN,

Intervenor,

*versus*

NATIONAL LABOR RELATIONS BOARD,

Respondent,

ANHEUSER-BUSCH BREWING PROPERTIES, LLC,

Intervenor.

_____

Petition for Review of a Decision of the
National Labor Relations Board
Agency No. 12-CA-094114

_____

Before GRANT, MARCUS, and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

After being fired by his employer, Anheuser-Busch Companies, LLC, Matthew Brown filed suit in federal district court alleging that his termination reflected racial discrimination and retaliation, in violation of Title VII. In response, Anheuser-Busch filed a motion seeking to compel arbitration of Brown's district court claims, asserting that at the time when he was hired, Brown had agreed to be bound by the company's Dispute Resolution Policy, which policy required Brown to arbitrate any such claims against the company. Brown disagreed that he was required to arbitrate his claims, insisting that he was entitled to have his claims adjudicated via district court proceedings, including a jury trial.

There is nothing unusual about an employer seeking to enforce an arbitration agreement to which the employer argues the suing employee is subject. Nor is it unheard of for the suing employee to contest the enforceability of the particular arbitration

agreement. And when such disputes arise, the method of resolving them is fairly routine: the district court interprets the agreement to determine whether the employee can be required to pursue his claims via arbitration instead of through a judicial proceeding. Further, if the court concludes that the employer's motion to compel arbitration was not only unmeritorious, but also frivolous, the court can levy sanctions against the employer.

That is the standard protocol by which such disputes are resolved. What one might not expect to happen is for a federal administrative agency to intrude itself into the proceedings and, prior to resolution by the district court, order the defendant employer to cease and desist any efforts to require arbitration. But that is what happened here. And indeed there is precedent permitting the National Labor Relations Board ("NLRB" or "Board") to direct persons under its jurisdiction—either management or a union—to cease their particular litigation efforts. Moreover, during his employment with Anheuser-Busch, Brown had been a member of a bargaining unit represented by a union—the International Brotherhood of Teamsters. After Anheuser-Busch asked the district court to compel arbitration, Brown filed an unfair labor practice charge with the NLRB, arguing that the defendant-employer's efforts to enforce its arbitration agreement contravened the collective bargaining agreement and constituted a unilateral change to the terms of Brown's employment, in violation of the National Labor Relations Act ("NLRA"). The district court action was stayed as a result of the filing of this unfair labor practice charge.

The Administrative Law Judge ("ALJ") assigned to rule on the charge agreed and ordered Anheuser-Busch to withdraw portions of its motion to compel arbitration in the district court litigation. The matter then moved to a review panel of the NLRB. In a split two-one decision, the NLRB dismissed the charge. The Board declined to determine whether Anheuser-Busch's motion to compel arbitration contravened relevant portions of the NLRA, and thereby constituted an unfair labor practice. Instead, the Board held that even if Anheuser-Busch's efforts to compel arbitration were unlawful under the NLRA, the Petition Clause of the First Amendment generally protected its right to give it a try in the district court litigation. Further, the Board concluded that Anheuser-Busch's motion to compel arbitration did not meet the exception to a litigant's First Amendment right to petition that the Supreme Court had carved out in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983) [hereinafter *"Bill Johnson's"*], which exception permits the Board to enjoin even reasonably-based lawsuits when the latter have "an objective that is illegal under federal law." *Bill Johnson's*, 461 U.S. at 737 n.5.

After careful review, and with the benefit of oral argument, we hold that the Board applied an erroneously narrow standard for determining whether Anheuser-Busch's motion had an illegal objective. We therefore grant the petition for review of the Board's order dismissing the complaint, vacate the decision of the Board, and remand for consideration of whether enforcement of the Dispute Resolution Policy against Brown would violate the NLRA.

## I.    BACKGROUND

### A.    The Terms of Brown's Employment with Anheuser-Busch

Anheuser-Busch employed Brown as a "can line depal operator."  Following disciplinary actions, Anheuser-Busch terminated Brown's employment.  Brown contends that these actions by Anheuser-Busch constituted racial discrimination.  Any claims Brown has against his former employer are potentially governed by two agreements:  (1) a Dispute Resolution Policy he agreed to as an applicant and (2) a Collective Bargaining Agreement that governs his employment conditions as a union employee.

#### 1.    Anheuser-Busch's Dispute Resolution Policy

Brown signed an employment application when he applied for a job with Anheuser-Busch.  The employment application states:

> I AGREE THAT IF I BECOME EMPLOYED BY THE COMPANY, AND UNLESS A WRITTEN CONTRACT PROVIDES TO THE CONTRARY, ANY CLAIM I MAY HAVE AGAINST THE COMPANY WILL BE SUBJECT TO FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE COMPANY'S DISPUTE RESOLUTION PROGRAM, AND THAT ARBITRATION WILL BE THE EXCLUSIVE METHOD I WILL HAVE FOR

FINAL AND BINDING RESOLUTION OF ANY SUCH CLAIM.

As to which employees are covered, the Dispute Resolution Policy (sometimes referred to as the "DRP") states it applies "to all salaried and non-union hourly employees of Anheuser-Busch Companies Inc." Anheuser-Busch hired Brown. Notably, Brown was a union employee subject at all times during his employment to the Collective Bargaining Agreement negotiated between Anheuser-Busch and the Union.

An employee subject to the Dispute Resolution Policy—that is, salaried and non-union employees—"must submit his or her dispute to the [Dispute Resolution Program]" when informal efforts to resolve their dispute are unsuccessful. The dispute resolution process has three levels for "Covered Claims": Level 1 – Local Management Review; Level 2 – Mediation; and Level 3 – Binding Arbitration. Relevant to this appeal, "Covered Claims" include "[e]mployment discrimination and harassment claims based on . . . race." If a covered claim proceeds to Level 3, "[t]he arbitrator's decision is the final, binding and exclusive remedy for the Employee's covered claim(s) and is equally final and binding upon the Company." Thus, the Dispute Resolution Policy precludes employees from bringing employment discrimination claims in federal court, meaning that, were he subject to the policy, Brown would have been required to submit his employment discrimination and retaliation claims to binding arbitration.

2.      The Collective Bargaining Agreement

The Collective Bargaining Agreement (sometimes referred to as the "CBA") negotiated by the Union on behalf of union employees like Brown has its own procedures for resolving employee disputes arising under this contract. Article 8 of the Collective Bargaining Agreement establishes a "Grievance Procedure" to resolve differences between Anheuser-Busch and the Union or employees covered by the Agreement regarding: "(a) Any matter relating to wages, hours of work, or working conditions covered by this Agreement; or (b) Any matter involving the meaning, interpretation, application or alleged violation of this Agreement by the Company."

The Collective Bargaining Agreement provides that "[t]he Company and the Union must resort to the use of the grievance and arbitration procedure established [in Article 8]." The grievance procedure of Article 8 provides for informal resolution of disputes followed by a three-step process. The third and final step in the process is submission of the dispute to a Multi-Plant Grievance Committee. If a dispute makes it to Step 3, "[d]ecisions of the M.P.G.C. shall be final and binding on all parties with no further appeal."

B.      **Brown's EEOC Charge, Termination, and Grievance**

Brown was the subject of disciplinary action during his employment at Anheuser-Busch. He initially received a Notice of

Violation of Plant Rules and Regulations grounded on "Refusal to Perform." It stated Brown "refused to comply with [his] manager's instruction and direct order to go to [his] job assignment on Line 1 Filler." The Union filed a grievance contesting the notice of violation and the grievance proceeded to Step 3 before the Multi-Plant Grievance Committee. The Multi-Plant Grievance Committee denied the grievance, stating "[r]efusal of a work order is one of the most serious industrial offenses."

Five days before the Multi-Plant Grievance Committee denied his grievance, Brown filed a Charge of Discrimination with the Equal Employment Opportunity Commission. He alleged racial discrimination in violation of Title VII, complaining that he had received a four-week suspension for insubordination whereas a white male had received only a one-week suspension for insubordination from a different manager.

A few weeks after returning to work following his suspension, an incident occurred on Brown's canning line. Specifically, Brown failed to notify the Line 3 filler operator of a can/beer change, causing 1,281 cases of Busch Light to be packaged in Natural Light cans and resulting in the beer having to be dumped. Anheuser-Busch charged Brown with "Inattention to Duty" and subsequently terminated his employment.

The Union filed a grievance seeking to "Remove Discipline and make Matt Brown whole as per the CBA." The grievance stated:

The grievant did not receive or sign for the split load in question. The grievant's previous 4 week suspension jumped progressive discipline. This incident, while serious, should not have resulted in termination. Similar holds this year in Jacksonville have not resulted in discipline being issued. Therefore Mr. Brown has not received discipline in a fair and impartial manner for just and sufficient cause. Mr. Brown has had to endure disparate treatment.

Following the Union's filing of a grievance, Brown filed a second Charge of Discrimination with the EEOC, alleging that Anheuser-Busch discharged him in retaliation for having filed his original EEOC charge. He alleged that two of his co-workers were merely put on notice and not discharged for their actions.

The Union's grievance on behalf of Brown proceeded through Step 3 binding arbitration before the Multi-Plant Grievance Committee. Ultimately, a majority of the panel denied the grievance: "The Panel finds that the Grievant was well aware of the split load, and that he had the primary responsibility for it. In this case the Company did not abuse its authority by following its pattern of progressive discipline." Thus, the Multi-Plant Grievance Committee rejected the Union's grievance and concluded that Anheuser-Busch's decision to fire Brown was justified.

### C.    Brown's Federal District Court Action

Operating on a separate track, the EEOC subsequently issued Brown a "Notice of Right to Sue" regarding each of his charges of race discrimination and retaliation.  Brown thereafter filed a three-count Complaint in the Middle District of Florida alleging racial discrimination and retaliation based on his four-week suspension and subsequent termination.  Count I alleges "Racially Discriminatory Suspension In Violation of Title VII, § 1981, and FCRA," (i.e. the Florida Civil Rights Act).  Count II alleges "Racially Discriminatory Termination In Violation of Title VII, § 1981, and FCRA."  Count III alleges "Retaliatory Termination In Violation of Title VII, § 1981, and FCRA."  Brown's racial discrimination claims assert that Brown received greater discipline than comparably situated white employees who had committed similar violations.  Brown's retaliation claim asserts that he engaged in protected activity when he filed his original EEOC charge regarding the four-week suspension, that Anheuser-Busch managers were aware of the charge, and that Anheuser-Busch terminated him in retaliation for filing the charge.

In response, Anheuser-Busch filed a motion to compel arbitration arguing that the Collective Bargaining Agreement and the Dispute Resolution Policy required Brown to arbitrate his discrimination claims.  As to the specific issue now before us, Anheuser-Busch argued that "Brown agreed to arbitrate his race discrimination and retaliation claims under the DRP" by virtue of signing his employment application.  Anheuser-Busch acknowledged that the employment application stated that disputes would be resolved

pursuant to the DRP "unless a written contract provides to the contrary," but it maintained that "[t]he CBA does not provide 'to the contrary'—like the DRP, it requires mandatory arbitration." Anheuser-Busch further acknowledged in a footnote that the Dispute Resolution Policy states that it applies to "all salaried and non-union hourly employees," but argued that the Dispute Resolution Policy does not prohibit union-represented employees from agreeing to arbitrate statutory claims pursuant to the DRP.

Brown opposed the motion, arguing that he was not required to arbitrate his Title VII claims pursuant to the Dispute Resolution Policy. He noted that although the Collective Bargaining Agreement required him to arbitrate any alleged violations of the <u>contractual</u> obligations set out in the agreement, it did not require arbitration of Brown's <u>statutory</u> Title VII discrimination claims. In support of this position, Brown cited to Supreme Court caselaw holding that an individual does not forfeit a private statutory cause of action by pursuing his contractual grievance to final arbitration under a nondiscrimination clause of a collective-bargaining agreement. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260–64 (2009) (distinguishing between contractual and statutory rights).

With respect to the Dispute Resolution Policy, Brown argued that basic contract principles precluded its enforcement, that it did not compel arbitration because it expressly states it applies only to salaried and non-union employees, and that Anheuser-Busch's "attempt to impose a non-negotiated grievance procedure differing from the [Collective Bargaining Agreement] constitutes a

grievous breach of its obligations under the National Labor Relations Act." Brown asserted "[a]s the DRP differs from the grievance procedures of the [Collective Bargaining Agreement] and was not the product of negotiation with the Union, Defendant's attempt to now force bargaining-unit members like Plaintiff to resort to it constitutes a unilateral change by it concerning a mandatory subject of bargaining." Brown emphasized that the grievance procedures of the collective bargaining agreement "do not cover statutory employment claims nor do they provide that in the event employees pursue such claims they will be obligated to do so under the terms of [Anheuser-Busch's] DRP."

### D.    Brown's Unfair Labor Practice Charge

#### 1.    The Parties' Positions

Several months after briefing on the motion to compel arbitration had concluded, Brown filed an unfair labor practice charge with the National Labor Relations Board. He alleged that Anheuser-Busch violated Sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act[1] by applying the Dispute Resolution Policy to him without having afforded his union an opportunity to bargain

---

[1] Section 8(a) defines unfair labor practices by an employer. 29 U.S.C. § 158(a). Section 8(a)(5) specifies that it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." *Id.* § 158(a)(5). Section 8(a)(1) specifies that it is an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights" to organize and collectively bargain pursuant to Section 157 (29 U.S.C. § 157) of the Act. *Id.* § 158(a)(1).

over the question whether such a policy should apply to its members.

A Regional Director of the National Labor Relations Board thereafter issued a complaint and notice of hearing against Anheuser-Busch. The Director contended that when Anheuser-Busch filed its motion to compel arbitration of Brown's federal race discrimination claims pursuant to the Dispute Resolution Policy, it changed the terms and conditions of employment for union employees without giving prior notice to the Union and without affording the Union an opportunity to bargain and, as such, violated Sections 8(a)(5) and (1) of the Act. As relief for this violation, the Director sought to have Anheuser-Busch withdraw that portion of its district court motion that requested Brown's claims be arbitrated pursuant to the Dispute Resolution Policy.

In response, Anheuser-Busch argued that "[r]eading Sections 8(a)(5), 8(d), and 9(a) of the Act together, an employer is only required to bargain with a union over 'terms and conditions of employment' for 'employees' in a 'unit appropriate for such purposes.'" Anheuser-Busch asserted that it did not have an obligation to bargain with the Union because Brown, who was merely an applicant for employment, was not a member of the Union when he agreed to arbitrate claims pursuant to the Dispute Resolution Policy, and, having been fired, he was "no longer an 'employee' as defined by Section 2(3) of the Act" when he filed his Title VII claims. Anheuser-Busch reasoned that there was "no basis for concluding that a Section 8(a)(5) violation of the Act occurred when the

Respondent's dispute resolution policy was applied to a non-bargaining unit member" in a way that did not vitally affect current bargaining members.

> ## 2. The Administrative Law Judge Finds That Anheuser-Busch Committed an Unfair Labor Practice by Moving to Enforce the Dispute Resolution Policy Against Brown

Following an evidentiary hearing, the ALJ assigned to the case issued a decision finding that Anheuser-Busch violated both Sections 8(a)(5) and 8(a)(1) of the Act by applying the Dispute Resolution Policy to Brown while he was an employee without prior notice to the Union and without affording the Union an opportunity to bargain over the policy. The ALJ concluded that "[t]he establishment of a dispute resolution program, or, the unilateral application, or attempted application, of such a program for unit employees is a mandatory subject of bargaining because it requires employees to arbitrate terms and conditions of their employment, including suspension and discharge." The ALJ noted that "[t]he Company does not dispute it took the unilateral action."

The ALJ rejected Anheuser-Busch's argument that it had no duty to bargain because Brown was not a union "employee" during his pre-employment application process and that Brown did not meet the requirements to qualify as an employee under section 2(3)

19-12745                Opinion of the Court                15

after he was terminated.[2]  The ALJ noted that the Act's definition of "employee" was broad and included applicants and former employees.  Accordingly, the ALJ concluded that Brown was an "employee" within the meaning of the Act when he was an applicant and that he was still an "employee" when Anheuser-Busch filed its motion to compel arbitration two years after Brown's termination for cause.  Among other remedies, the ALJ ordered Anheuser-Busch to withdraw that portion of its defense to Brown's lawsuit requesting the district court to compel arbitration of Brown's claims.

### 3. The Board Holds That Anheuser-Busch's Motion Is Protected by the First Amendment's Petition Clause

Objecting to enforcement of the ALJ's order, Anheuser-Busch filed exceptions to that decision with the Board.  Among other arguments, Anheuser-Busch asserted that the ALJ misapplied labor law principles in two respects.  First, Anheuser-Busch argued

---

[2] Section 2(3) provides in part:

> The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment . . . .

29 U.S.C. § 152(3).

that the ALJ had misinterpreted the relevant NLRA provisions when it concluded that Brown was at all relevant times an "employee" within the meaning of the Act and, as a result, had determined that Anheuser-Busch violated Section 8 when it sought to arbitrate Brown's district court claims without negotiating with the Union. Anheuser-Busch also argued that the ALJ had erred when it failed to determine whether applying the Dispute Resolution Policy to Brown significantly affected current bargaining unit employees.

The above issues are not before this Court on appeal. What is before the Court arises from Anheuser-Busch's remaining claim of error: specifically, that the ALJ's order requiring Anheuser-Busch to withdraw its motion to compel arbitration pursuant to the Dispute Resolution Policy violated Anheuser-Busch's First Amendment Right to Petition.

Defending the ALJ's decision, the NLRB's General Counsel contended that the ALJ's order did not violate the First Amendment because Anheuser-Busch's motion to compel arbitration fell within *Bill Johnson's* footnote 5 provision, which permits the NLRB to enjoin lawsuits that have "an objective that is illegal under federal law." *Bill Johnson's*, 461 U.S. at 737 n.5. Specifically, the General Counsel maintained that Anheuser-Busch's motion to compel arbitration had an illegal objective because it sought to enforce a Dispute Resolution Policy that it had sprung on an employee applicant without having ever given the Union an opportunity to bargain concerning whether its members would be required to arbitrate all

statutory causes of action.  That being so, Anheuser-Busch's position "affected the rights of bargaining unit employees in violation of Section 8(a)(5) of the Act."

Upon review, the Board disagreed with the General Counsel, issuing a two-to-one decision reversing the ALJ's determination that Anheuser-Busch had engaged in an unfair labor practice.  Notably, the Board declined to address the merits of Brown's charge—that is, whether Anheuser-Busch had engaged in an unfair labor practice by seeking to enforce an arbitration agreement that the Union had never okayed via a collective bargaining agreement.[3]  Rather than address the merits, the Board determined that Anheuser-Busch's motion to compel was protected by the Petition Clause of the First Amendment in accordance with *Bill Johnson's* reasoning.  In essence, the Board concluded that the filing before a judicial forum of a motion to compel arbitration could not, by itself, trigger the illegal objective exception that would permit the Board to enjoin the motion's prosecution.

After reviewing prior Board decisions—albeit none of the cases cited in *Bill Johnson's* footnote 5 as examples of suits having an illegal objective—the Board concluded that "the enforcement of a

---

[3] The Board stated in footnote 9 that "[i]n light of our conclusion that the Petition Clause resolves this case, a finding that does not turn on Brown's employment status or membership in the bargaining unit at the time the Motion to Compel was filed, we need not address those issues.  Further, our dismissal of the complaint moots the General Counsel's and Charging Party's cross-exceptions seeking additional remedies."

policy or contractual provision is not an illegal objective if the policy or provision is not itself illegal." The majority concluded:

> Here, the DRP is not alleged to be facially unlawful. The sole violation alleged is the manner in which the Respondent sought to apply it to Brown, i.e., by filing a motion in court without giving the Union notice and an opportunity to bargain. The General Counsel cites no case in which the Board has found that a court filing had an "illegal objective" solely because the filing itself amounted to a unilateral change. Compare *Regional Construction Corp.*, 333 NLRB [313,] 320 [(2001)] (referring to "an[] *underlying act* by the Respondent which would be a violation of some federal law") (emphasis added). Here, there is no "underlying act," only the Motion to Compel itself.

Thus, the majority found an injunction appropriate only if there is an illegal "underlying act." And the majority "position is that the filing of the motion did not have an illegal objective within the meaning of the Supreme Court's Petition Clause jurisprudence because the DRP is lawful, and therefore [Anheuser-Busch], by filing its motion, did not ask the court 'to countenance an[] underlying act by the Respondent which would be a violation of some federal law.'" To hold otherwise, the majority declared, "would swallow the rule of *Bill Johnson's* and turn the Petition Clause of the First Amendment into an empty promise."

A dissenting Board member strongly disagreed, arguing that Anheuser-Busch's motion clearly had an illegal objective because Anheuser-Busch "sought to impose its Dispute Resolution Policy (DRP) on a discharged bargaining unit employee . . . after he filed a racial-discrimination lawsuit challenging his termination," application of which policy "was directly contrary to the applicable collective-bargaining agreement that governed Brown's employment, and it unilaterally changed his terms and conditions of employment in violation of the National Labor Relations Act." In short, the dissent concluded that the Board could and should enjoin prosecution of Anheuser-Busch's motion as a violation of Sections 8(a)(5) and (1) of the Act because Anheuser-Busch "sought to implement—with the aid of the federal court's authority—a unilateral change that it could not lawfully implement otherwise." The dissent further noted that "advocating for a *result* that would violate the law does, in fact, constitute an illegal objective."

## II.    DISCUSSION

The Petitioner Union, joined by Intervenor Brown, petitions for review of the Board's decision that the First Amendment's Petition Clause protects Anheuser-Busch's motion to compel arbitration pursuant to the Dispute Resolution Policy. Petitioner contends that the NLRB's decision to the contrary is not the product of reasoned decision-making, noting that Anheuser-Busch's motion to compel clearly had an illegal objective: that is, to change the terms of Brown's employment in contravention of the Collective Bargaining Agreement without first bargaining with the Union.

We review the Board's legal conclusions *de novo* and its findings of fact for substantial evidence. *Ridgewood Health Care Ctr., Inc. v. NLRB*, 8 F.4th 1263, 1274 (11th Cir. 2021). We will not enforce a Board decision that fails to engage in reasoned decisionmaking. *Id.* at 1275; *see also Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374–75 (1998).

### A.    Caselaw Concerning Arbitration of Legal Causes of Action by Union Members Against an Employer

Collective bargaining agreements between a union and an employer govern the conditions of employment for the employee members of that union. Typically, such agreements call for arbitration of any grievance that arises from a dispute between the union and the employer as to the parties' compliance with the terms of the agreement. Thus, when Anheuser-Busch fired Brown, his union filed a grievance contesting the fairness of that decision and seeking Brown's reinstatement. An arbitration board then resolved that grievance, concluding that Anheuser-Busch had just cause to fire Brown.

But that was not the end of the story. Brown then chose to file a race discrimination and retaliation claim under Title VII in federal court based on the same termination that was the subject of the grievance arbitration proceeding. The initial question a novice to this process might ask is whether an employee whose grievance has been rejected can even file a subsequent legal action given that the arbitrator has already ruled that the termination was based

on just cause. The answer to that question is "yes," an employee can still pursue such a legal action.

In *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 49 (1974), the Supreme Court rejected an employer's election-of-remedies argument that an employee has forfeited his right to a judicial forum for claimed discriminatory discharge when that employee has first pursued a grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement. The Supreme Court explained that a grievance is designed to vindicate a "contractual right" under a CBA, while a lawsuit under Title VII asserts independent statutory rights accorded by Congress.[4] *Id.* at 49–59. Thus, a union's acceptance of a collective bargaining agreement provision calling for arbitration of grievances arising from an alleged contractual breach does not constitute a waiver of the employee's right to subsequently file a judicial action asserting a statutory Title VII violation based on the same adverse action that the grievance arbitrator had deemed to be justified, as "there can be no prospective waiver of an employee's rights under Title VII." *Id.* at 51.

The next question is whether, as a condition of employment, the employer can require the union employee to arbitrate

---

[4] "In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress." *Alexander*, 415 U.S. at 49–50.

any such statutory employment claims.  Certainly, when a non-union employee has agreed to arbitrate a statutory discrimination claim, that waiver of the employee's right to a judicial forum for the claim can be enforced unless the statute itself forbids arbitration.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27 (1991) (holding that because Congress has not precluded the waiver of a judicial forum for ADEA claims, a plaintiff employee's agreement to arbitrate any controversy arising out of his employment or termination thereof was enforceable as to the employee's age discrimination lawsuit).

When, however, an employee pursuing a statutory employment discrimination claim was a member of a union at the time of the alleged discrimination, the question whether that employee can be required to arbitrate the claim depends on what the collective bargaining agreement provides.  As part of a collective bargaining agreement, a union can agree that its members be required to arbitrate statutory claims that would otherwise be litigated in a judicial forum.  For such a waiver to be enforced, however, the agreement to arbitrate statutory antidiscrimination claims must be "explicitly stated" in the collective bargaining agreement and the agreement must "clearly and unmistakably" require the union member to arbitrate such claims.  *See 14 Penn Plaza LLC*, 556 U.S. at 274.

As noted, Brown was a member of the Union's bargaining unit and there was nothing in its collective bargaining agreement with Anheuser-Busch calling for arbitration of an employee's Title

19-12745                Opinion of the Court                23

VII claims filed as a cause of action in federal court. Given the limited ruling by the Board relying solely on constitutional grounds, it is not our task to review the contractual merits of Anheuser-Busch's motion to compel arbitration. That said, the above Supreme Court authority, coupled with the absence of any express language in the Collective Bargaining Agreement calling for arbitration of statutory claims, would seemingly provide strong support for Brown's position that the Dispute Resolution Policy could not be enforced against him.[5]

But rather than advance these particular objections to arbitration in the district court, Brown and the Union chose to pursue the more indirect route of asking the NLRB to enjoin any efforts by Anheuser-Busch to enforce the purported arbitration agreement between it and Brown. As noted, the Board declined to resolve the unfair labor practice charge against Anheuser-Busch on

---

[5] Indeed, in a somewhat recent Title VII case filed against Anheuser-Busch, a district court refused to compel arbitration of the Dispute Resolution Policy as a matter of both contractual interpretation and in reliance on *14 Penn Plaza*'s requirement that a collective bargaining agreement must clearly and unmistakably require union members to arbitrate their statutory discrimination claims in order for a court to require arbitration of those claims. The district court concluded that Anheuser-Busch met neither test. *See Ode v. Anheuser-Busch, LLC*, No. 19-cv-00233, 2020 WL 5405666 (N.D. Ga. Aug. 19, 2020) (Ray, J.), *aff'g Ode v. Anheuser-Busch, LLC*, No. 19-cv-00233, 2020 WL 10692080 (N.D. Ga. Apr. 9, 2020) (Johnson, Mag. J). The union in that case apparently did not pursue an unfair labor practice complaint based on Anheuser-Busch's effort to enforce its arbitration agreement. And Anheuser-Busch declined to pursue an appeal of the district court's refusal to compel arbitration following the jury trial that resulted in a defense verdict.

the merits, instead determining that the First Amendment precluded it from enjoining Anheuser-Busch's efforts to compel arbitration even if the arbitration of Brown's Title VII claims would violate the NLRA. That being so, the above caselaw regarding the impact of collective bargaining agreements on arbitration agreements provides context to this dispute, but it cannot resolve the constitutional question that is before us. We therefore proceed to analyze judicial and Board precedent addressing the impact of the First Amendment on the Board's power to enjoin litigation pursued by either a union or management.

### B.    The *Bill Johnson's* Standard and Its Exceptions

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or . . . the right . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. "The First Amendment right to petition the government for a redress of grievances includes a right of access to the courts."[6]

---

[6] Brown argues that the Petition Clause does not apply to Anheuser-Busch's motion to arbitrate because it is a defensive motion and "arbitration as between non-governmental parties is a matter of contract, not a procedure protected by the Petition Clause." However, none of the parties raised this argument before the Board. In any event, we see no reason why the Petition Clause should not apply to Anheuser-Busch's defensive motion. *See Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005) ("[A]sking a court to deny one's opponent's petition is also a form of petition."); *In re Burlington N., Inc.*, 822 F.2d 518, 532 (5th Cir. 1987) (finding with respect to *Noerr-Pennington* protection of litigation activities, "no reason to apply any different standard to defending lawsuits than to initiating them").

*DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288 (11th Cir. 2019) (quoting *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1370 (11th Cir. 1993)).  The right to petition the government for a redress of grievances is "one of the most precious of the liberties safeguarded by the Bill of Rights," *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) and is "high in the hierarchy of First Amendment values."  *DeMartini*, 942 F.3d at 1288.

One can reasonably assume that the filing of a motion to compel arbitration will typically be protected as an exercise of the First Amendment right to petition.  But in the context of labor relations law, that right is not absolute.  Specifically, this case turns on whether Anheuser-Busch's filing of its motion to compel arbitration constituted "an objective that is illegal under federal law." *Bill Johnson's*, 461 U.S. at 737 n.5.  If so, the NLRB possessed the authority to direct Anheuser-Busch to cease pursuing that motion, notwithstanding what would otherwise be its right under the First Amendment's Petition Clause to utilize that defense in the federal action brought against it by Brown.

The basis for the Board's authority to enjoin litigation, and limitations on that authority, arise from the Supreme Court's decision in *Bill Johnson's*.  In that case, a restaurant owner had filed a state court tort lawsuit alleging that individuals protesting the firing of a waitress were engaged in harassing and dangerous picketing outside his establishment, as well as the distribution of a libelous leaflet.  *Id.* at 733–34.  In response, the waitress filed an unfair labor practice charge with the Board claiming that her termination

and the lawsuit were done in retaliation for her participation in protected activities: that is, her efforts to organize a union. *Id*. at 734–35. After considering the evidence, the ALJ issued a decision concluding that the owner's suit lacked a reasonable basis and that it was filed with the intent to penalize protected activity. *Id*. at 736, 744. The Board upheld the ALJ decision and ordered the owner to withdraw his suit. *Id*. at 737. The Ninth Circuit Court of Appeals enforced that order. *Id*.

The question before the Supreme Court on certiorari was whether the NLRB could enjoin as an unfair labor practice "an [ongoing] employer's lawsuit that the federal law would not bar except for its allegedly retaliatory motivation." *Id*. at 737 n.5. The Court concluded that the existence of a retaliatory motive, by itself, was insufficient to permit the NLRB to enjoin the litigation: "The filing and prosecution of a well-founded lawsuit may not be enjoined . . . even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [NLRA]." *Id*. at 743. Instead, *Bill Johnson's* established a general rule that the NLRB can enjoin such a lawsuit only if the latter both lacked a reasonable basis and was filed with a retaliatory motive. *Id*. at 748–49 ("[r]etaliatory motive and lack of reasonable basis are both essential prerequisites" for enjoining litigation).

Nevertheless, the Court carved out two exceptions to *Bill Johnson's* restriction of the Board's power to enjoin litigation—or to state the matter affirmatively, two situations in which the Board can

19-12745                  Opinion of the Court                    27

enjoin litigation even if the litigation was not both retaliatory and baseless. The Court outlined the exceptions in footnote 5:

> It should be kept in mind that <u>what is involved here is an employer's lawsuit that the federal law would not bar except for its allegedly retaliatory motivation</u>. <u>We are not dealing with</u> a suit that is claimed to be beyond the jurisdiction of the state courts because of federal-law preemption, or <u>a suit that has an objective that is illegal under federal law</u>. Petitioner concedes that the Board may enjoin these latter types of suits. Nor could it be successfully argued otherwise . . . .

*Id*. at 737 n.5 (emphasis added and internal citations omitted). Translating the above, even if a lawsuit is not both baseless and filed with a retaliatory motive—which would typically mean that it could not be enjoined—it may still be enjoined (1) if it is a state suit that is preempted by federal law or (2) if it is a suit that has an objective that is illegal under federal law.

In the present case, there seems to be no serious contention that Anheuser-Busch filed its district court motion to compel out of any retaliatory motive. Like many employers, it simply prefers arbitration of Title VII claims over litigation in a judicial forum.[7]

---

[7] Whether the motion to compel arbitration is baseless is another question. *Cf. DeMartini*, 942 F.3d at 1300–01, 1304 (probable cause to initiate a civil lawsuit requires "no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication," and the presence of such probable

Instead, the issue on appeal is whether Anheuser-Busch's motion to compel arbitration was filed with "an objective that is illegal under federal law," and, if it was, the Board should have then directed Anheuser-Busch to cease its litigation of that motion. *Id.* As to this question, the Board concluded that the mere filing by an employer of a motion to arbitrate an employee's statutory discrimination claim does not meet the above standard. That is, the Board majority reasoned, there is nothing inherently illegal about arbitration agreements, as a general matter, and certainly nothing facially illegal about the particular arbitration agreement Anheuser-Busch was attempting to enforce in response to Brown's federal Title VII suit. Thus, the Board concluded, absent some other illegal underlying act, an employer's efforts to enforce such an agreement in the court where it has been sued by a purported party to that agreement does not constitute an objective that is illegal under federal law, and it therefore cannot give rise to an unfair labor practice.

As explained below, the Board's reasoning is at odds with its own precedent, as well as that of federal courts that have been called on to apply the *Bill Johnson's* illegal-objective exception.

---

cause will generally defeat, as a matter of law, a § 1983 First Amendment retaliation claim based on the civil suit). But even assuming that Anheuser-Busch's motion was baseless, this would not necessarily defeat application of the general *Bill Johnson's* rule disallowing an injunction of the litigation because the latter must be both baseless and filed with a retaliatory motive; and, as noted in text, there appears to be no basis for inferring a retaliatory motive on Anheuser-Busch's part.

### C.    Application of *Bill Johnson's* "Illegal Objective" Standard by Federal Courts and the NLRB

On occasion, federal courts have been called upon to determine whether litigation-type activity by unions or management—that is, the filing of grievances, a request for arbitration before the NLRB, or the filing of lawsuits or motions in a judicial forum—constitutes litigation that has an objective that is illegal under federal law, meaning the litigation would lose protection under the Petition Clause and consequently the NLRB would be empowered to direct the filing party to cease that litigation.

In *Truck Drivers, Oil Drivers, Filling Station & Platform Workers' Union Local 705 v. NLRB* (*Emery Air Freight*), 820 F.2d 448 (D.C. Cir. 1987), the union had filed a grievance with the NLRB asking it to enforce a provision of the collective bargaining agreement that it argued required the employer to cease doing business with a subcontractor that the union had tangled with in an unrelated labor matter. *See id.* at 451. Concluding that the union filed the grievance with the motivation to improperly exert pressure on the employer to boycott a subcontractor who was not represented by the union, in violation of section 8(b)(4)(ii)(B), the Board ruled that the grievance was filed with an objective that was illegal under federal law. *Id.* Accordingly, per *Bill Johnson's*, the Board concluded that the union had thereby committed an unfair labor practice. *Id.*

The D.C. Circuit opinion, authored by Judge Silberman, agreed that the grievance may well have run afoul of *Bill Johnson's*

unlawful objective provision, but it clarified the analysis that should be used in deciding this question. *See id.* at 452. Specifically, the court noted that it was irrelevant whether or not the union's motivation was benign. *Id.* Instead, the focus had to be on whether the relief it was seeking was a lawful one. *Id.* And for the grievance to have had an illegal objective, the collective bargaining agreement provision that it sought to enforce must itself have been illegal. *Id.* Thus, the proper inquiry was whether the union's interpretation of the provision in question would run afoul of the NLRA should that interpretation be adopted by the body deciding the merits of the grievance. *Id.* Moreover, an interpretation that would give rise to an illegal, "hot cargo" agreement would certainly violate Section 8(e) of the Act and would therefore constitute litigation with an unlawful objective. *Id.* The court therefore remanded for the Board to "explicitly deal with [the union's] primary argument that by filing a grievance it was merely seeking enforcement of a lawful provision of its collective bargaining agreement." *Id.* at 453.

The D.C. Circuit confirmed this approach again a few years later in *Local 32B-32J, Service Employees International Union* (*Service Employees*) *v. NLRB*, 68 F.3d 490 (D.C. Cir. 1995). There, in another secondary boycott situation, the union had sought arbitration over its claim that the employer had breached the collective bargaining agreement by failing to require a subcontractor to take certain actions with regard to its own labor force. *See id.* at 493. With Judge Silberman again authoring the court's opinion, the D.C. Circuit agreed that, like other forms of litigation, a request for arbitration

can constitute an unfair labor practice if it has an illegal objective under federal law. *Id*. at 495. And to rule that a particular arbitration request has an illegal objective, the Board must determine that the particular interpretation being advanced by the party seeking arbitration would lead to an unlawful result should that interpretation be accepted. *Id*. Therefore, in the context of the case before it, the precise question was whether the interpretation of the contract proposed by the union would violate § 8(e), as a "hot cargo" agreement—that is, an agreement that the employer would cease doing business with another person. *Id*. And the D.C. Circuit agreed with the Board's conclusion that, if acceded to, the interpretation posed by the union would violate that provision of the Act. *Id*. at 495–96. Accordingly, the court concluded that the Board had correctly found that the union's request for arbitration constituted an unfair labor practice. *Id; see also Road Sprinkler Fitters Local Union No. 669 v. NLRB*, No. 17-1159, 2018 WL 3040513, at ⋆4 (D.C. Cir. June 1, 2018) (court affirmed NLRB's finding of an unfair labor practice under section 8(b)(4)(ii) based on the union's filing of a lawsuit and grievance against a neutral employee, noting that it did not matter that the merits of the claim had not previously been determined as "the interpretation the Union seeks is 'itself' illegal—such as by interjecting contract obligations into employment relations where they do not apply;" and, accordingly, *Bill Johnson's* footnote 5 applies); *Small v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local 200*, 611 F.3d 483, 492–93 (9th Cir. 2010) (union engaged in unfair labor practice by seeking, in state court, an order that employer had to assign certain work to its union employees

even though the Board had determined that a different union should be assigned the work under section 10(k); accordingly, a lawsuit seeking to countermand that determination had an unlawful objective); *Chauffeurs, Teamsters and Helpers Local 776 v. NLRB*, 973 F.2d 230, 236 (3rd Cir. 1992) (union that sued in district court to enforce an arbitration award that required employer to recognize it as the bargaining agent for employees committed an unfair labor practice in persisting in litigation efforts, as union was pursuing an action it could not win, given the Board's earlier rulings, and its continuing litigation sought an objective that was not lawful).

Finally, in *Bill Johnson's* footnote 5 itself, the Supreme Court offered an example of the type of legal action that could be enjoined by the NLRB as seeking an illegal objective, stating, "we have upheld Board orders enjoining unions from prosecuting court suits for enforcement of fines that could not lawfully be imposed under the [National Labor Relations] Act." 461 U.S. at 737 n.5. In support of that statement, the Court cited two cases: *Granite State Joint Board, Textile Workers Union of America*, 187 N.L.R.B. 636, 637 (1970) (*Textile Workers I*), *enforcement denied*, 446 F.2d 369 (1st Cir. 1971) (*Textile Workers II*), *rev'd*, 409 U.S. 213 (1972) (*Textile Workers III*) and *Booster Lodge No. 405, Int'l Ass'n of Machinists & Aerospace Workers v. NLRB*, 412 U.S. 84, 85 (1973).

In *Textile Workers*, the union had fined its former members for strikebreaking conduct engaged in by them after the latter's resignations as union members. Thereafter, the union sought judicial enforcement of these fines in New Hampshire state court, which

prompted the filing of an unfair labor practice as a result of this action. *See Textile Workers II*, 446 F.2d at 371. The Board ruled that the union's filing of this litigation violated Section 8(b)(1)(A) of the Act. *Textile Workers III*, 409 U.S. at 215. Section 8(b)(1)(A) makes it unlawful for a labor organization "to restrain or coerce . . . employees in the exercise of the rights guaranteed [them] in [Section 7 of the Act]." 29 U.S.C. § 158(b)(1)(A). One right guaranteed in Section 7 of the Act is the right to refuse to undertake union activities. *Id.* § 157. Accordingly, the Board found that the union had committed an unfair labor practice and, to remedy this violation, the Board ordered that the union cease and desist from seeking judicial enforcement of fines against these former union members. *Textile Workers I*, 187 N.L.R.B. at 637. The Court of Appeals denied enforcement of the Board's decision concluding that "no federal labor policy would be overridden by judicial enforcement of union fines in the context of this case" because it interpreted the Act to permit employees to waive their right to refuse to undertake union activities and the employees had done so by previously voting to levy fines against anyone aiding or abetting the company during the strike. *Textile Workers II*, 446 F.2d at 374.

The Supreme Court reversed, agreeing with the Board that the union's imposition of a fine against former members violated those members' rights, as protected by the NLRA, and that the union had, by seeking enforcement of those fines in court, committed an unfair labor practice. *Textile Workers III*, 409 U.S. at 217–18. In short, the Court concluded that the Board could properly enjoin a

lawsuit filed to enforce a remedy that was unlawful under the NLRA. In the parlance of *Bill Johnson's*, the union's suit to enforce the strikebreaking fine against former union members had the illegal objective of restraining those former members from exercising their statutory right to refuse to undertake union activities. That being so, the Board could enjoin the suit seeking to achieve a result that contravened the NLRA.

As noted, the Supreme Court also cited *Booster Lodge* as an example of a suit that could be enjoined as seeking an illegal objective. As in *Textile Workers*, the Board had held that a union violated Section 8(b)(1)(A) of the Act by fining employees who had resigned from the union before returning to work during a strike, and accordingly the Board ordered the union to cease its litigation seeking court enforcement of these fines. *See Booster Lodge*, 412 U.S. at 87. The Court of Appeals affirmed the Board decision. *See id*. As with *Textile Workers*, the Supreme Court agreed that the Board decision correctly concluded that the union had engaged in an unfair labor practice by initiating law suits to collect fines against former union members because success on such claims would violate the NLRA. *Id*. at 89–90.

In short, in the context of litigation implicating labor law, federal courts have followed the directive of the Supreme Court in concluding that the filing of litigation—be it a lawsuit before a judicial forum or a grievance or request for arbitration before the NLRB—can be enjoined by the NLRB when the object of that litigation is unlawful. And to determine whether the standard has

been satisfied, these courts have looked to see whether the ruling that the litigant seeks before a court or the Board is one that, if granted by the decisionmaker, would violate the NLRA. We adopt and follow that same principle in deciding this case.

Yet, the Board here made no inquiry whether compelled arbitration in this case would violate the NLRA. Instead, as noted, the Board concluded that to trigger the illegal-objective ground for enjoining litigation, there must be some additional "underlying act" beyond the filing of the particular litigation in question. Unfortunately, the Board offered no hint as to what such an act might possibly be. Further, leaving aside the absence of any federal judicial authority in support of this "underlying act" gloss that the Board has placed on the *Bill Johnson's* footnote 5 provision, it is seemingly a novel approach within the Board's own precedent. Indeed, we are aware of no Board decision prior to this case that has shown any reluctance to enjoin[8] litigation to enforce a contract if enforcement in the manner advocated would violate the Act.

For example, in *Long Elevator*, the Board found the union to have engaged in an unfair labor practice when it filed a grievance seeking the Board's endorsement of the union's particular interpretation of the collective bargaining agreement. *Int'l Union of*

---

[8] We recognize that the Board lacks power to enjoin conduct in the same sense that a court does, but we use the term "enjoin" as shorthand for the Board's directive that a party cease and desist from particular litigation activity.

*Elevator Constructors* (*Long Elevator*), 289 N.L.R.B. 1095, 1095–96 (1988), *enforced*, *NLRB v. Int'l Union of Elevator Constructors*, 902 F.2d 1297, 1308 (8th Cir. 1990). Although acknowledging the general rule articulated in *Bill Johnson's* that would prohibit the Board from enjoining, as an unfair labor practice, a lawsuit that was not both baseless and retaliatory, the Board also noted the exception to this general rule when the litigation in question has an objective that is illegal under federal law. *Id.* And because the union's interpretation of the agreement, if accepted, would violate federal labor law, the Board directed the union to cease and desist from the particular litigation at issue. *Id.*

The Board later recognized *Long Elevator* as illustrating a "category of cases which do fit within the footnote 5 exception" of *Bill Johnson's* when the Board adopted the ALJ's decision in *Regional Construction Corporation*, 333 N.L.R.B. 313, 319 (2001). That decision stated that when "the underlying contract is either facially illegal or would be illegal as enforced, a lawsuit or grievance seeking to enforce such an illegal contract provision would itself be illegal under the footnote 5 exception of *Bill Johnson's*." *Id.* (emphasis added).

Likewise, in *Road Sprinkler*, which is the D.C. Circuit case cited above, the NLRB had adopted an ALJ's order enjoining a union's grievance and lawsuit to enforce its interpretation of a collective bargaining agreement. *Road Sprinkler Fitters Loc. Union 669*, 365 N.L.R.B. No. 83, 2017 WL 2274720, at *1 (May 23, 2017). Responding to the union's argument that its grievance and lawsuit should

not be enjoined because they were arguably meritorious, the order noted that even if the union's reading of the agreement was correct, a lawsuit or grievance with an illegal object is not protected by the Petition Clause, per the Supreme Court's *Bill Johnson's* and the Board's *Long* decision. *Id*. at *3. And the order further found that the interpretation of the agreement advocated by the union would render that agreement violative of a provision of the NLRA (Section 8(e)), and hence unlawful: "Use of the grievance procedure and the court system in this manner constitute unlawful means [in violation of a provision of the NLRA]." *Id*. Notably, there is no language in the order adopted by the *Road Sprinkler* Board indicating that some additional illegal underlying act—beyond the litigation itself that seeks to secure an interpretation of the agreement that would violate the NLRA—would be necessary before one could describe the litigation as having an illegal objective.

In short, the above caselaw establishes that a lawsuit's attempt to enforce a contract in a manner that would violate the NLRA if the lawsuit were successful constitutes litigation that has an illegal objective and that may therefore be enjoined, even if the litigation is not both retaliatory and baseless. As noted, we are aware of no Board decision prior to the present case that has deviated from this principle.

**D.    We Reject The Board's Narrowing of the Standard Governing *Bill Jackson's* Footnote 5 Provision**

As discussed above, in the context of litigation implicating labor law, the Supreme Court, other federal courts, and the NLRB, have concluded that the filing of litigation—be it a lawsuit before a judicial forum or a grievance or request for arbitration before the NLRB—can be enjoined by the NLRB when the object of that litigation is unlawful. And to determine whether this standard has been satisfied, these bodies have looked to see whether the ruling that the litigant seeks before a court or the Board is one that, if granted by the decisionmaker, would violate the NLRA. Yet, the Board here made no inquiry whether compelled arbitration of Brown's Title VII claims would violate the NLRA. Instead of utilizing its labor law expertise to answer that question, the Board took it upon itself to add a gloss that greatly narrowed—if not eviscerated—what had been understood to be *Bill Johnson's* illegal-objective principle.

On that score, the Board concluded that because a litigant's filing of a motion to compel arbitration is not inherently unlawful, the mere filing of such a motion by Anheuser-Busch could not by itself constitute an illegal objective under *Bill Johnson's*. That the ultimate object of that motion to compel arbitration may well have violated the NLRA did not alter the Board's thinking. According to the Board, neither a motion to compel arbitration nor the particular arbitration agreement at issue here was facially invalid; after all litigants regularly file such motions and the Dispute Resolution Policy looked fine on its face. That being so, the Board concluded, the filing of a motion to compel enforcement of an arbitration

agreement would not, by itself, be sufficient to trigger the *Bill Johnson's* illegal-objective ground and thereby permit the Board to enjoin the particular litigation. *See Anheuser-Busch, LLC*, 367 N.L.R.B. No. 132, 2019 WL 2232899, at *4–5 (May 22, 2019).

Accordingly, the Board reasoned, there must be some additional illegal "underlying act" beyond the filing of the particular litigation in question, albeit it offered no hint what such an act might be. *See id.* And a hint would have been helpful as we cannot envision a realistic example where the filing of a motion to enforce a contractual agreement will be accompanied by an additional illegal underlying act. For sure, we can safely assume that a motion to enforce a murder-for-hire contract or any agreement whose enforcement would itself constitute a crime would be a motion that would not get very far in any jurisdiction. But absent such far-out hypotheticals that would likely never arise in NLRB disputes, the logical import of the Board's reasoning is to conclude that all types of litigation must be allowed to go forward, even if the relief sought would violate the NLRA. After all, there is no meaningful distinction between the motion to compel arbitration here based on a purported contractual agreement between Brown and Anheuser-Busch and the efforts to enforce a union or management's interpretation of a particular contract in the cases discussed above. Brown says that if Anheuser-Busch succeeds in his litigation to enforce the Dispute Resolution Policy, this outcome would violate the NLRA; likewise, the litigants in the above-cited cases made the same argument when seeking to enjoin their adversaries' litigation

to enforce a particular contractual agreement. Yet, in contrast with the Board's approach here, those litigants obtained from the NLRB an injunction of the particular litigation based solely on their showing that victory by the litigation's proponent would result in a violation of the NLRA.

That is, in the two cases the Supreme Court cited in *Bill Johnson's* footnote 5 as examples of litigation with an unlawful objective—*Textile Workers* and *Booster Lodge*—the union had filed suit in court to enforce fines that it had levied on former members. There, the Supreme Court had upheld the Board's determination that, because the fines were illegal under the NLRA, the effort to enforce them in court constituted an unfair labor practice that could properly be enjoined. And it was these two cases that the Supreme Court cited in *Bill Johnson's* as an example of litigation with an illegal objective that could be enjoined by the NLRB, notwithstanding the Petition Clause of the First Amendment. *Bill Johnson's* said nothing about the need for any additional underlying illegal act; the litigation itself was sufficient to meet the illegal objective because success in the litigation would give rise to a remedy that violated the NLRA. For these purposes, we find no meaningful distinction between the Board's ability to enjoin the prosecution of a lawsuit in *Textile Workers* and *Booster Lodge* and its power to require Anheuser-Busch to cease its prosecution of a motion to compel arbitration of Brown's statutory claims upon a finding by the Board that the granting of Anheuser-Busch's requested relief would violate the NLRA.

Similarly, when reviewing the Board's finding that a union had committed an unfair labor practice in requesting arbitration seeking endorsement of the union's interpretation of a provision of its collective bargaining agreement with the employer, the D.C. Circuit in *Emery Air Freight* and *Service Employees* held that to determine whether *Bill Johnson's* illegal-objective exception applied to bar litigation that would otherwise be protected by the Petition Clause, one had to determine whether the litigant's interpretation of the contract—if acceded to by the Board—would lead to a result that was unlawful under the NLRA. There was no indication by the D.C. Circuit that the litigant had to engage in some additional "underlying" unlawful act beyond the filing of litigation that sought a result at odds with the NLRA.

Finally, in *Long Elevator*, the Board took the same approach as the above- cited cases, looking only to the question whether the contract interpretation advanced by the litigant union would violate federal labor law should the litigant be successful in the litigation. Again, the Board offered no suggestion that some additional underlying unlawful act would be required before *Bill Johnson's* footnote 5 provision could be applied.

Thus, there is no indication in prior judicial or Board decisions that to run afoul of the illegal objective prohibition, a litigant would have to engage in some independent, unlawful "underlying act" in addition to the filing of litigation whose end goal would constitute a violation of the NLRA. Notably, *Bill Johnson's* never indicated such a prerequisite or used the phrase "underlying act."

The absence of any such requirement prompts the question how the Board here arrived at its new standard. The Board's majority opinion indicates that the requirement derives from a sentence in *Regional Construction*, an NLRB decision which the Board characterized as establishing that "in order to have [an] illegal objective, respondent's motion 'has to have involved a matter . . . which if granted would commit the court to countenance an[] <u>underlying act</u> by the Respondent which would be a violation of some federal law.'" *Anheuser-Busch*, 367 N.L.R.B. No. 132, 2019 WL 2232899, at *4 (quoting *Regional Construction Corp.*, 333 N.L.R.B. at 313, 320 (2001)) (emphasis added).

It is true that the *Regional Construction* opinion used the phrase "underlying act" in summarizing its understanding of the Supreme Court's directive in footnote 5 of *Bill Johnson's*.[9] Our own reading of *Regional Construction*, however, does not support the interpretation that the Board gives to this phrase. In *Regional Construction*, an employer had filed suit in state court alleging tortious conduct by the union in blocking ingress and egress to construction site entrances. The state court agreed and issued an order directing the union to cease those activities and abide by specified picketing sites. No one argued that the employer had acted wrongly in

---

[9] The full quotation is as follows: "In order to fit within the exception of footnote 5 of *Bill Johnson's*, the motion to amend the previous court orders has to have involved a matter which is either preempted or which if granted would commit the court to countenance [an] underlying act by the [employer] which would be a violation of some federal law." *Regional Construction Corp.*, 333 N.L.R.B. at 320.

violation of the NLRA in pursuing this litigation. Later, the employer sought an amendment of the order to address changed circumstances with the entryways. At this point, the union and the NLRB General Counsel cried foul, alleging that the union was entitled to engage in lawful picketing at some of the entrances identified in the employer's amended motion; accordingly, the General Counsel filed an unfair labor practice complaint against the employer. The state court judge determined that the employer's claims were preempted by federal law, and two days after the General Counsel had filed the unfair labor practice charge against the employer, the judge therefore dismissed the amended motion. *See Regional Construction Corp.*, 333 N.L.R.B. at 313–16.

An ALJ subsequently held a hearing on the unfair practice charge and issued an order that was subsequently adopted by the Board. *See id.* at 313–20. In considering whether the employer had committed an unfair labor practice by pursuing the amended motion, the ALJ stated that the only relevant part of the *Bill Johnson's* footnote 5 provision authorizing intervention by the Board in this state court litigation was that part recognizing preemption as a ground for doing so, and the ALJ found that the employer's amended state court motion was preempted by federal law. *Id.* at 320.

Nevertheless, the Board in this case seized on the way in which the *Regional Construction* opinion described *Bill Johnson's* footnote 5 exception relating to an illegal objective. As noted above, the ALJ had indicated that for the illegal-objective exception in

footnote 5 of *Bill Johnson's* to have applied, the motion before the state court would have had to involve a matter that, if granted, would commit the court to countenance an underlying act that would violate federal law. Applying this sentence to the present case, it means that the motion to compel arbitration, if granted, would result in a violation of federal law: which is exactly what the Union is arguing. The arbitration motion is the matter; arbitration itself is the underlying act.

But this isolated sentence is not the only statement the *Regional Construction* opinion made concerning the illegal-objective standard. Prior to this summary sentence, the *Regional Construction* decision acknowledged the existence of a line of NLRB cases that had held that a lawsuit or grievance seeking to enforce a contract provision that was "either facially illegal or <u>would be illegal as enforced</u>" would constitute litigation that "would itself be illegal under the footnote 5 exception of *Bill Johnson's*." *Id.* at 319 (emphasis added). That is precisely the Union's position in this case: that arbitration pursuant to the contract that Anheuser-Busch was attempting to enforce in court would violate the NLRA.

And significantly, when discussing in more detail the category of cases "where the underlying acts constitute unfair labor practices and the lawsuit is simply an attempt to enforce the underlying act," the *Regional Construction* decision actually cited *Long Elevator* as its example of a case illustrating this category. *Id.* The decision described *Long Elevator* as holding that litigation seeking to enforce a contract provision "predicated on a reading of the

collective-bargaining agreement that, if successful, would have [been illegal under the NLRA]" would be illegal under *Bill Johnson's* footnote 5. *Id*. Again, *Long Elevator*, cited favorably in *Regional Construction*, disfavors the Board's rationale in this case.

Given all the above, we do not read *Regional Construction* to have articulated a new standard for gauging the existence of an illegal objective. Indeed, it seems quite a stretch for the Board here, based on a strained—and we think incorrect—parsing of *Regional Construction*'s casual phrasing, to proclaim that an underlying act in addition to litigation seeking an objective is now an "indispensable"[10] prerequisite to application of the *Bill Johnson's* footnote 5. Thus, *Regional Construction* does not support the Board's conclusion that an unlawful underlying act in addition to the challenged litigation must be present before the illegal-objective provision in *Bill Johnson's* footnote 5 can be satisfied.

Moreover, implicit in the Board's articulation of this newly-discovered requirement is its own disagreement with *Bill Johnson's* footnote 5. In the Board's own words:

> But it cannot be the case that the "illegal objective" exception applies without an underlying unlawful act. Otherwise, the "illegal objective" exception would apply whenever the litigation act itself—e.g., the filing

---

[10] According to the Board's majority opinion in the present case, "[t]he 'underlying act' requirement is indeed legally significant. In fact, it is indispensable." *Anheuser-Busch*, 367 N.L.R.B. No. 132, 2019 WL 2232899, at *5.

of a lawsuit or, as here, of a defense motion—could be condemned as an unfair labor practice, absent the protection afforded by the Petition Clause.  And if *that* were the case, it would not matter that the lawsuit or motion was reasonably based, and it would not matter that the lawsuit or motion was not impermissibly motivated.  It could still be condemned as an unfair labor practice under the "illegal objective" exception, which, on this view, would swallow the rule of *Bill Johnson's* and turn the Petition Clause of the First Amendment into an empty promise.  That is the position the dissent embraces.

*Anheuser-Busch*, 367 N.L.R.B. No. 132, 2019 WL 2232899, at *5 (emphasis added).

In short, the Board in the present case complains that the Union's interpretation of *Bill Johnson's* footnote 5 illegal-objective exception would lessen the First Amendment's protection against NLRB interference in litigation that *Bill Johnson's* text would otherwise offer to the entity pursuing that litigation had there been no footnote 5.  Well, yes, that's obviously true.  Exceptions to a rule tend to restrict the breadth of that rule.  But that was obviously the Supreme Court's purpose, else it would not have included the footnote in the opinion.  In *Bill Johnson's*, the Supreme Court announced the principle to be applied in a case in which the ground prompting the Board's injunction of pending litigation was the retaliatory motive of the proponent of the litigation.  When that is

the case, the Court held, the Board can enjoin the litigation only when the particular litigation is both baseless and motivated by the desire to retaliate: "The filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act." *Bill Johnson's*, 461 U.S. at 743.

But in footnote 5, the Court made clear that this standard did not apply in situations where the retaliatory motivation of the litigant was not the basis for the Board's injunction. Specifically, said the Court, "It should be kept in mind that what is involved here is an employer's lawsuit that the federal law would not bar except for its allegedly retaliatory motivation. We are not dealing with a suit . . . that has an objective that is illegal under federal law. Petitioner concedes that the Board may enjoin these latter types of suits." *Id.* at 737 n.5.

Certainly, the right to petition under the First Amendment would have been more strongly protected had the Supreme Court made the rule it announced in text applicable to all situations in which the Board is asked to enjoin litigation by an employer or a union. Had the Court done so, the NLRB would be empowered to enjoin pending litigation only when that litigation was both baseless and prompted by a retaliatory motive; whether or not the litigation sought an unlawful objective would be irrelevant. But that is not what the Court did, and it is the Supreme Court itself that must alter footnote 5 should it someday determine that the "illegal

objective" exception strikes the wrong balance between the First Amendment Right to Petition and deference to the NLRB's power to enforce the NLRA.

Further, even though the Board majority's real disagreement appears to be with the unlawful-objective exception itself, the majority, like the parties, nonetheless acknowledges that when the object of the litigation at issue seeks an unlawful objective, the Board can enjoin it. *See Anheuser-Busch*, 367 N.L.R.B. No. 132, 2019 WL 2232899, at *3, *4 n.11. This is a concession that the Board was compelled to make as it has consistently acknowledged the continuing applicability of the unlawful-objective standard when determining whether to enjoin particular litigation as an unfair labor practice. *See, e.g., Road Sprinkler Fitters Local Union 669*, 365 N.L.R.B. No. 83, 2017 WL 2274720, at *3; *Operative Plasterers & Cement Masons' Int'l Ass'n Local 200 (Standard Drywall)*, 357 N.L.R.B. 1921, 1923 n.11, 1924 (2011), *enforced*, 547 F. App'x 809 (9th Cir. 2013); *Dilling Mech. Contractors, Inc.,* 357 N.L.R.B. 544, 546 (2011); *Mfrs. Woodworking Ass'n of Greater New York, Inc.,* 345 N.L.R.B. 538, 540 n.7 (2005).

That being so, there must be some type of litigation for which the standard would apply. Yet, the Board's gloss on this standard—requiring an additional unlawful underlying act in addition to the litigation itself—appears to create an empty set. As noted, we are unclear what example the Board might proffer as an example of litigation that would meet its new standard. In short, we conclude that the Board erred when it injected this new

19-12745                Opinion of the Court                49

"underlying act" requirement into the inquiry whether Anheuser-Busch's motion to compel arbitration constituted litigation with an unlawful objective.  On remand, the Board should instead determine whether the outcome sought by Anheuser-Busch's motion—the compelled arbitration of Brown's Title VII claims under the Dispute Resolution Policy—would violate the NLRA.  If the Board decides that the answer to that question is "yes," it should then order all relief that is appropriate based on Anheuser-Busch's unlawful conduct.

## III.    CONCLUSION

For the reasons explained above, we **GRANT** the Union's petition for review, **VACATE** the Board's decision, and **REMAND** to the Board, consistent with the directive set out above, to determine whether Anheuser-Busch's motion to compel arbitration pursuant to the Dispute Resolution Policy may be enjoined as having an objective that is illegal under federal law.